[17]

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LINDSAY ADAMSON, on behalf of herself and all others similarly situated, | : : : : | Civil Action No. 06-866 (FLW) |
| Plaintiff, | : : : : | |
| v. | : : | **OPINION** |
| ORTHO-McNEIL PHARMACEUTICAL, INC. and WATSON PHARMACEUTICALS, INC., | : : : : | |
| Defendants. | : | |

**WOLFSON, District Judge**

Presently before the Court is a Motion to Dismiss by Defendants Ortho-McNeil Pharmaceutical, Inc. ("Ortho McNeil") and Watson Pharmaceuticals, Inc. ("Watson"). In February 2006, Plaintiff, Lindsay Adamson ("Adamson"), filed the instant complaint alleging that Defendants intentionally misrepresented and concealed from Plaintiff and other "brand loyalists" that Ortho Tri-Cyclen and TriNessa are identical drugs. Thus, Plaintiff contends that she and other brand loyalists overpaid for Ortho Tri-Cyclen because TriNessa, the identical drug, was available at a reduced price. Defendants argue that Plaintiff's Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court has considered the moving, opposition and reply papers, and for the reasons stated in the opinion

1

below, Defendants' Motion to Dismiss is granted.

**I. Background**

Initially, the Court notes that this action concerns the marketing and sale of prescription drugs. Thus, a brief description of the federal regulatory scheme that governs these matters is appropriate. Under the Food Drug and Cosmetic Act, a drug company that wishes to introduce a new pharmaceutical product must file a New Drug Application ("NDA") with the Food and Drug Administration ("FDA") that contains technical information on the composition of the drug, the manufacturing process involved, and the results of clinical trials establishing the efficacy and safety of the drug. 21 U.S.C. § 355(b). The FDA will approve an NDA "after it determines that the drug meets the statutory standards for safety and effectiveness, manufacturing and controls, and labeling." 21 C.F.R. § 314.105(c). The FDA may refuse to approve an NDA for numerous reasons including that proposed labeling is "false or misleading" or that the "application contains an untrue statement of material fact." Id. at 314.125(b)(6)&(b)(7).

By contrast, the FDA permits companies who wish to market a generic version of a previously approved drug to file an Abbreviated New Drug Application ("ANDA") rather than a full NDA. Through an ANDA, a generic drug manufacturer may rely on the safety and effectiveness data set forth in the brand name manufacturer's NDA if the generic company establishes that the proposed generic drug is the bioequivalent of the generic drug, i.e. that the drug has the same active ingredients, dosage strength, absorption rate and therapeutic effect as the pioneer drug. See 21 U.S.C. § 355(j)(2).

In addition to NDAs and ANDAs, there is a third method pursuant to which the FDA

permits the manufacturer of a new pharmaceutical product to use alternative marketing and

distribution arrangements for its own approved new drug.  Under this third method, the

manufacturer of a new pharmaceutical product can market and/or distribute an "authorized

generic" version of an already approved product without going through the ANDA process.  Pl's

Compl. ¶¶ 44-45; Defendant's Statement of Facts ("Def's Fact St.") at 6.  Indeed, it is this third

method, i.e. the method that provides for the marketing of an authorized generic drug, that is at

issue in this case.

Specifically, OMJ Pharmaceuticals ("OMJ"), a wholly owned subsidiary of Ortho McNeil,

manufactures the brand name oral contraceptive Ortho Tri-Cyclen.  On October 28, 2002, OMJ

entered into a supply agreement with Watson under which Ortho McNeil agreed to manufacture

and sell Watson a generic version of Ortho Tri-Cyclen to be marketed by Watson under its own

trade name, TriNessa.  Pl's Compl. ¶ 53; Certification of Regan H. Crotty, Esq., ("Crotty Cert."),

ex. 4, §§ 2.1 & 5.4.  Thus, TriNessa is an "authorized generic" version of Ortho-Tri Cyclen

manufactured by OMJ and distributed by Watson.  As evidenced by a series of press releases

issued by Watson, the agreement between Ortho-McNeil and Watson for the sale and distribution

of TriNessa was made public.  Pl's Compl. ¶¶ 53, 54 & 60; Crotty Cert., exs. 5 & 6.   Indeed, an

October 2002 press release announced that Watson "entered into a supply arrangement with OMJ

Pharmaceutical Inc. . . .for a portfolio of oral contraceptives.  Pl's Compl. ¶¶ 53 & 54; Crotty

Cert., ex. 5. The agreement provides Watson the ability to launch brand equivalent versions of

three oral contraceptives."  Id.; Id.  Moreover, the press release listed the following Watson

Products and their OMJ equivalents:

| Watson Product | Brand Equivalent |
|---|---|
| Necon(R) 7/7/7 | ORTHO-NOVUM(R) 7/7/7 |
| Mononessa (TM) | ORTHO-CYCLEN (R) |
| TriNessa (TM) | ORTHO TRI-CYCLEN (R) |

Id.; Id.

In addition, a December 2003 press release explained that Watson had initiated shipments of TriNessa "the authorized brand equivalent of the oral contraceptive Ortho Tri-Cyclen(R), marketed by Ortho-McNeil Pharmaceutical, Inc.  TriNessa is indicated for prevention of pregnancy in women and for treatment of moderate acne vulgaris."  Pl's Compl. ¶ 60; Crotty Cert., ex. 6.  Subsequently, both products were made available to consumers.

Plaintiff, Lindsay Adamson, is a self-described "brand loyalist" or a purchaser who is "willing to pay a higher price to obtain [a] brand drug rather than a therapeutically equivalent generic drug."  Pl's Compl. ¶6.  Since January 19, 2004, Plaintiff has purchased and used Ortho Tri-Cyclen.  Pl's Compl.¶¶ 2, 16.  Plaintiff contends that although Ortho Tri-Cyclen and TriNessa are identical drugs, Watson "never disclosed in any fashion that its authorized generic, TriNessa, was in fact the same drug as Ortho Tri-Cyclen."  Pl's Compl. ¶60.  Thus, Plaintiff alleges that she and other brand loyalists suffered a financial loss when they purchased Ortho Tri-Cyclen because TriNessa, the identical drug, was available at a lower price.  Id. ¶¶ 8 & 9.

To support her allegations, Plaintiff relies on various statements from marketing and sales materials that pertain to both Ortho Tri-Cyclen and TriNessa.  First, Plaintiff contends that Watson's website fails to disclose that TriNessa is the same drug as Ortho Tri-Cyclen and instead describes TriNessa as "therapeutically equivalent to Ortho Tri-Cyclen."  Pl's Compl. ¶61.[1]  Next,

_____

[1]The Court notes that although Plaintiff did not supply a citation for this quote, the Court found the relevant information on the following website:

Plaintiff contends that the TriNessa package insert duplicates the tests listed on the Ortho TriCyclen label and substitutes its name for Ortho Tri-Cyclen. Pl's Compl. ¶ 62.  In other words, Plaintiff alleges that Watson "doesn't say that the tests were conducted for Ortho Tri-Cyclen but apply to TriNessa because TriNessa is the same drug."  Id.  Third, Plaintiff alleges that a statement on Ortho McNeil's website  – "[i]sn't it great to find the one that's right for you" – is misleading because it claims that there is only one contraceptive exactly like Ortho Tri-Cyclen.  Id. ¶ 63. Further, Plaintiff contends that Ortho McNeil falsely represented that Ortho Tri-Cyclen was a singular and unique type of birth control.  In support of this contention, Plaintiff relies on the following statements from Ortho's website:

> Myth: All birth control pills are the same
> Fact: Not all birth control pills contain the same type of hormones.
>
> The progestin in some birth control pills may cause unpleasant effects...However not all progestins trigger these effects to the same degree. . . .For example, norgestimate, a newer progestin contained in Ortho Tri-Cyclen Tablets may be less likely to cause unpleasant side effects among its Pill users.

Id. ¶ 64.

Finally, Plaintiff contends that Defendants engaged in a deceptive marketing scheme because Ortho McNeil advertises Ortho Tri-Cyclen's ability to improve acne and Watson does not promote this same benefit of TriNessa. Id. ¶ 67-68.  For all these reasons, Plaintiff argues that Ortho McNeil "has not informed and will not inform purchasers of Ortho Tri-Cyclen that it is also manufacturing the identical pharmaceutical. . . .which is being sold at a significantly lower price."

Plaintiff filed a complaint in the United States District Court on February 24, 2006,

---

http://www.oralcontraceptives.com/brand_trinessa.asp.

alleging violation of the New Jersey Consumer Fraud Act, violation of all 50 States' Consumer Protection Acts[2], negligent misrepresentation and seeking injunctive relief.  Subsequently, on June 12, Defendants filed the instant Motion to Dismiss.

**II. Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the contents of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993); Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir.1989).  A court may not grant a Rule 12(b)(6) motion to dismiss unless it is certain that no set of facts can be proven that would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir.1981).   Nevertheless, when deciding a motion to dismiss, the Court need not credit a complaint's conclusory allegations, bald assertions, or legal conclusions masquerading as factual claims. See Morse v. Lower Merion School District, 132 F.3d 902, 906 n. 8 (3d Cir.1997). The focus of a court's Rule 12(b) analysis "is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims." Oatway v. Am. Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir.2003) (citations omitted).

───────────────

[2]The Court notes that Plaintiff brought the instant matter on behalf of herself and all other individuals similarly situated.  However, as discussed below, because this Court finds that Plaintiff has not set forth a claim under the New Jersey Consumer Fraud Act, it is not necessary to address the consumer protection acts in the remaining 49 states.

Generally, when conducting such an inquiry, material beyond the pleadings should not be considered. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (D.N.J. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993). However, documents expressly relied upon or integral to the complaint and matters of public record, if the claims of the plaintiff are based upon such documents, may be considered. See, e.g., In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. The failure of a plaintiff to attach or cite documents in the complaint does not preclude a court from reviewing the text of extrinsic documents. See id. at 1426. The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint, i.e. lack of notice to the plaintiff, is dissipated "[w]here plaintiff has actual notice. . . .and has relied upon these documents in framing the complaint." Id. (quoting Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir.1993)).  In the instant matter, although the parties have filed certifications and attached numerous documents, the relevant documents were also referenced in Plaintiff's Complaint.  For example, Plaintiff's Complaint cites Watson's press releases, Pl's Compl. ¶¶ 53, 54 & 60, Watson's website, Pl's Compl. ¶ 61, Ortho McNeil's website, Pl's Compl. ¶¶63-67, and TriNessa's package insert, Pl's Compl. ¶62.  Thus, despite Plaintiff's failure to attach these documents to her complaint, these documents have been expressly relied upon by Plaintiff, thus there is no issue regarding notice to the Plaintiff, and this Court may properly consider them in deciding the instant motion to dismiss.

## III. Discussion

### 1. Consumer Fraud

In the instant matter, Defendants initially argue that Plaintiff cannot maintain a claim for

consumer fraud under the New Jersey Consumer Fraud Act ("CFA").  The New Jersey Consumer

Fraud Act prohibits, in relevant part, "[t]he act, use or employment by any person of any

unconscionable commercial practice, deception, fraud, false pretense, false promise,

misrepresentation, or the knowing, concealment, suppression, or omission of any material fact

with intent that others rely upon such concealment, suppression or omission, in connection with

the sale or advertisement of any merchandise."  N.J. Stat. Ann. § 56-8:2.  A private party may

bring a cause of action for consumer fraud if she demonstrates an "ascertainable loss" and that the

defendant committed an unlawful practice.  Scibek v. Longette, 339 N.J.Super. 72, 78 (App. Div.

2001).  An unlawful practice typically involves an affirmative act of fraud and can arise from an

affirmative act, an omission, or a violation of an administrative regulation.  Id.; see also Strawn v.

Canuso, 140 N.J. 43, 60 (1995); Cox v. Sears Roebuck & Co., 138 N.J. 2, 19 (1994).

　　　　To state a claim under the CFA, an advertisement must have "the capacity to mislead the

average consumer."  Union Ink Co., Inc. v. AT&T Corp, 352 N.J.Super. 617, 644 (App. Div.

2002).  New Jersey courts have held that "[e]ven if an advertisement is literally true, it may be

actionable if 'the overall impression [it] create [s]. . .is misleading and deceptive to an ordinary

reader.'"  Id. (citation omitted).  However, actionable statements cannot be "mere puffery."

Gennari v. Weichert Realtors, 148 N.J. 582, 607 (1997).  Indeed, "[n]ot just 'any erroneous

statement' will constitute a misrepresentation prohibited by [the Act]. The misrepresentation has

to be one which is material to the transaction and which is a statement of fact, found to be false,

made to induce the buyer to make the purchase." Id. (quoting Gennari v. Weichert Realtors, 288

N.J. Super. 504, 535 (N.J. Super. App. Div. 1996)).

　　　　Thus, in determining whether the allegations in Plaintiff's complaint state a claim for

relief that satisfies Rule 12(b)(6), I must determine whether the statements on which Plaintiff bases her claim can be read as having the capacity to mislead. In the complaint, Plaintiff alleges that Defendants' marketing materials contain misrepresentations and omissions that convey a message that Ortho Tri-Cyclen and TriNessa are not the same drug[3].  Specifically, Plaintiff points to the following alleged misrepresentations and omissions: (1) language stating that TriNessa is "therapeutically equivalent to Ortho Tri-Cyclen"; (2) language on Ortho McNeil's website proclaiming: "Isn't it great to find the one that's right for you?"; (3) language on Ortho McNeil's website stating: "Myth: All birth control pills are the same.  Fact: Not all birth control pills contain the same type of hormones"; (4) language on Ortho McNeil's website explaining that "[t]he progestin in some birth control pills may cause unpleasant effects. . . .However not all progestins trigger these effects to the same degree. . . .For example, norgestimate, a newer progestin contained in Ortho Tri-Cyclen Tablets, may be less likely to cause unpleasant side effects"; and (5) the absence of marketing material touting TriNessa's dermatological benefits. Accordingly, Plaintiff argues that these alleged misrepresentations and omissions caused Plaintiff to purchase Ortho Tri-Cyclen instead of the lower priced TriNessa resulting in Plaintiff's monetary loss.

Defendants, on the other hand, contend that none of these alleged misrepresentations or omissions are actionable as a matter of law.  Indeed, Defendants argue that the aforementioned

---

[3]Importantly, the Court notes that despite ambiguous language in the Complaint, Plaintiff admits that Defendants disclosed that TriNessa was manufactured by OMJ.  See Pl's Opp. Br. at 25 ("Contrary to Defendants' arguments, Plaintiff does not claim that Defendants omitted that TriNessa was manufactured by OMJ; rather that Ortho Tri-Cyclen and TriNessa is the same drug.");see also Crotty Cert., ex. 7.  Indeed, Plaintiff admits that TriNessa's packaging reads, "Mfd. By: OMJ Pharmaceuticals, Inc."  Id.; Id.

statements are not misrepresentations or omissions but accurate factual statements regarding the individual drugs and that, at most, these statements may be considered sales puffery.  In addition, Defendants contend that they had no legal duty to advertise any particular benefits of either drug or to advertise in any particular way.  Finally, Defendants note that Watson did not buy the rights to use Ortho McNeil or OMJ trademarks, and thus it could not lawfully use the Ortho Tri-Cyclen brand name.  The Court agrees.

Initially, Plaintiff argues that Watson falsely used the term "therapeutically equivalent" to describe TriNessa when, in fact, TriNessa is not "therapeutically equivalent" to Ortho Tri-Cyclen, but is identical to the brand name drug.  Thus, Plaintiff contends that "Watson's statement that TriNessa is the 'therapeutic equivalent' of Ortho Tri-Cyclen does not inform anyone that TriNessa is, in fact, identical to Ortho Tri-Cyclen."  Pl's Br. at 16.  To the extent that Plaintiff argues that the characterization of TriNessa as the therapeutic equivalent of Ortho Tri-Cyclen is somehow misleading, the Court does not agree.

To begin, the Court notes that according to the FDA, "any drug product in the List repackaged and/or distributed by other than the application holder is considered to be therapeutically equivalent to the application holder's drug product." FDA, Approved Drug Products with Therapeutic Equivalence Evaluations (2006)("Orange Book") at x, *available at* http://www.fda.gov/cder/orange/obannual.pdf (emphasis added).  Moreover, the FDA does not limit the use of the term "therapeutic equivalent" to generic drugs and does not prohibit the use of this term to describe authorized generic drugs. See id. at xii. (distinguishing between drugs that have no bioequivalence problems and are therefore considered "therapeutically equivalent" and drugs that present bioequivalence problems and are not considered therapeutically equivalent).

10

Therefore, Watson's characterization of the TriNessa as "therapeutically equivalent" to Ortho Tri-Cyclen is accurate and does not have the capacity to mislead.  Thus, Plaintiff cannot rely on this statement to state a claim under the New Jersey CFA.

In addition, Plaintiff contends that "Defendants' advertisements tout [sic] Ortho Tri Cyclen stands alone among other birth controls; marketing it as the **only** oral contraceptive exactly like Ortho Tri-Cyclen."  Pl's Br. at 14.  Specifically, Plaintiff suggests that the following statements support this assertion: language on Ortho McNeil's website providing "Isn't it great to find the one that's right for you?" language on Ortho McNeil's website stating: "Myth: All birth control pills are the same.  Fact: Not all birth control pills contain the same type of hormones"; and language on Ortho McNeil's website explaining "[t]he progestin in some birth control pills may cause unpleasant effects. . . .However not all progestins trigger these effects to the same degree. . . .For example, norgestimate, a newer progestin contained in Ortho Tri-Cyclen Tablets, may be less likely to cause unpleasant side effects."  Based on these statements, Plaintiff argues that Defendants falsely depict Ortho Tri-Cyclen as a one-of-a-kind drug.  The Court does not agree.

To constitute consumer fraud, the New Jersey Supreme Court has held that a business practice "must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer."  Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 391, 416 (1995).  Further, it is well-established that New Jersey courts distinguish between misrepresentations of fact actionable under the CFA and mere "puffing" about a product that will not support relief.  Rodio v. Smith, 123 N.J. 345, 352 (1991).  For example, in Rodio, the New Jersey Supreme Court held that the slogan, "You're in good hands with Allstate," did not

violate the New Jersey CFA because it was a statement of fact that did not amount to a "deception, false promise, misrepresentation or any other unlawful practice within the ambit of the Consumer Fraud Act." Id.  Indeed, the court noted that the above slogan, "however persuasive ....in nothing more than puffery." Id.  Similarly, in New Jersey Citizen Action v. Schering Plough Corp., an advertisement that stated "with allergy control that doesn't make you drowsy, you. . . .can lead a normal nearly symptom-free life again" was held not to be actionable under the CFA. 367 N.J. Super., 8, 13-14 (App. Div. 2003).  There, the court found Plaintiff's contention that the ad was intended to be a guarantee of total effectiveness was meritless.  Id. at 14.  Moreover, the court held that this type of ad was not a statement of fact, but an expression "in the nature of puffery and thus...not actionable." Id.

Based on the holdings in Rodio and New Jersey Citizen Action, I find that none of the statements upon which Plaintiff relies in the instant matter are actionable under the CFA.  Indeed, despite Plaintiff's argument that the above statements can be read to suggest that Ortho Tri-Cyclen is a one-of-a-kind drug, I find that Defendants' marketing materials are not susceptible to that interpretation.  At best, Defendants' marketing materials advise consumers that birth control pills contain different types of hormones and that Ortho Tri-Cyclen contains a particular type of progestin.  These are all accurate statements about Ortho Tri-Cyclen and are not misleading or deceptive in any way.   Further, these statements do not suggest, nor can they be read to suggest, that Ortho Tri-Cyclen is the only pill to use norgestimate or to cause fewer side effects.  In fact, the ad on Ortho McNeil's website advising "[t]he progestin in some birth control pills may cause unpleasant effects. . . .However not all progestins trigger these effects to the same degree. . . .For example, norgestimate. . . may be less likely to cause unpleasant side effects" suggests that there

12

are other hormones and other birth control pills that could also cause fewer side effects.  Indeed, the Court questions whether these statements even rise to the level of sales puffery.  Thus, I find that these statements do not have the capacity to mislead and Plaintiff cannot rely on them to set forth a claim under the New Jersey CFA.

Finally, to the extent that Plaintiff argues that Defendants are under an obligation  to inform the public that TriNessa and Ortho Tri-Cyclen are identical, the Court does not agree.  Indeed, Plaintiff does not cite a single case to suggest the existence of such a duty and courts have routinely held that competitors have no duty to advertise or sell a competitor's products.  See Olympia Equip. Leasing Co. v. Western Union Tel.Co., 797 F.2d 370, 375-279 (7th Cir. 1986); Morgan v. Microsoft Corp., 2001 WL 783758 at *3 (Wash. App. Div. July 9, 2001) (" Microsoft was under no duty to allow competitors to advertise their products. . . .advertising a competitor's products 'is not a form of cooperation commonly found in competitive markets' but rather, it is 'the antithesis of competition")(internal quotations omitted).  In addition, to the extent that Plaintiff argues that Defendants must advertise a particular benefit of a drug including TriNessa's dermatological benefits, I do not agree. As above, Plaintiff does not cite any case to support this proposition.  Moreover, a press release issued at the time of TriNessa's release and that is currently available on Watson's website[4] and TriNessa's package insert explain, "TriNessa is also indicated for the treatment of moderate acne vulgaris. . . ."  TriNessa Package Insert, *available at* http://pi.watsonpharm.com/data_stream.asp?product_group=1321&p=pi&language=E.  Thus,

---

[4]See supra pp. 4-5; see also Press Release, Watson Pharmaceuticals, Watson Pharmaceuticals Launch TriNessa Oral Contraceptive, *available at* http://ir.watsonpharm.com/phoenix.zhtml?c=65778&p=irol-newsArticle&ID=480538&highlight =.

Plaintiff's allegation regarding Watson's duty to advertise the dermatologic benefits of TriNessa has no legal or factual basis.

For the reasons set forth above, I find that none of the statements relied upon by the Plaintiff contain any actionable misrepresentations or omissions.  Therefore, Plaintiff has failed to set forth a claim under the New Jersey CFA and Plaintiff's claim for consumer fraud must be dismissed pursuant to Rule 12(b)(6).

2. Negligent Misrepresentation

Plaintiff additionally contends that Defendants' marketing materials negligently misrepresented to Plaintiff the "actual identity of the drugs Ortho Tri-Cyclen and TriNessa."  Pl's Compl. at ¶103.  Negligent misrepresentation "requires proof that an 'incorrect statement was negligently made and justifiably relied upon' and that injury was sustained as a consequence of that reliance." Saurino v. Senatore, 2006 WL 2346300 at *3 (App. Div. 2006)(quoting Carroll v. Cellco Partnership, 313 N.J.Super. 488, 502 (App. Div.1998)).  Because Plaintiff has not established that the Defendants propagated any incorrect statements, Plaintiff cannot set forth a claim for negligent misrepresentation and this claim must be dismissed pursuant to Rule 12(b)(6).

3. Unjust Enrichment

Finally, Plaintiff sets forth a claim for unjust enrichment in which she essentially argues that because of alleged misrepresentations in Defendants' marketing materials, she purchased the more expensive Ortho Tri-Cyclen instead of TriNessa, the less expensive "authorized generic."

Thus, Plaintiff asserts that because she and other "brand loyalists" paid more for Ortho Tri-Cyclen, the brand name drug, Ortho McNeil was unjustly enriched.

To state a claim for unjust enrichment, a plaintiff must allege (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it. In re K-Dur Antitrust Litigation, 338 F.Supp. 2d 517, 544 (D.N.J. 2004) (citing Restatement of Restitution § 1 (1937)). Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law. National Amusements, Inc. v. N.J. Tpk. Auth., 261 N.J.Super. 468, 478 (Law Div.1992), aff'd, 275 N.J.Super. 134 (App.Div.1994). To establish a claim for unjust enrichment under New Jersey law, a plaintiff must allege "both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). In addition, the unjust enrichment doctrine requires that a plaintiff show that it "expected remuneration from defendant at the time it performed or conferred a benefit on defendant" and that the "failure of remuneration enriched defendant beyond its contractual rights." Id.

In the instant matter, I find that Plaintiff cannot state a claim for unjust enrichment. As discussed above, the Court finds that none of the statements upon which Plaintiff relies contain actionable misrepresentations or omissions. Indeed, Plaintiff purchased and paid for Ortho Tri-Cyclen and received Ortho Tri-Cyclen. The mere fact that she chose not to purchase TriNessa, the authorized generic version of the drug, does not amount to Ortho McNeil's unjust enrichment. Indeed, New Jersey courts have held that the cornerstones of a claim for a quasi-contractual claim of unjust enrichment are the "key words [ ] Enrich and Unjustly. To recover on the theory of quasi-contract the plaintiffs must prove that defendant was enriched. . .  received a benefit, and

15

that retention of the benefit without payment therefor would be unjust." <u>Callano v. Oakwood</u> <u>Park Homes Corp</u>., 91 N.J.Super. 105 (App. Div. 1966).  As set forth in detail above, this Court finds that  Defendants' marketing and advertising materials contained accurate and truthful statements about both Ortho Tri-Cyclen and TriNessa and that these materials were not misleading.  Further, Defendants had no duty to advertise in a particular manner or to advertise each other's products.  Thus, there was nothing "unjust" about Plaintiff's purchase of Ortho Tri-Cyclen or Ortho McNeil's receipt of payment for this purchase and Plaintiff's claim for unjust enrichment must be dismissed pursuant to Rule 12(b)(6).

## IV. CONCLUSION

For the reasons discussed herein, Defendants' Motion to Dismiss is GRANTED and this case will be closed.  An appropriate order will follow.

Dated: November 16, 2006                                      /s/ Freda L. Wolfson
                                                             Honorable Freda L. Wolfson
                                                             United States District Judge

16